## SUPREME COURT.

OLIVER H. CLARK and others agt. THE MAYOR, &c. OF NEW YORK.

On a motion for a *new trial* in an action for damages caused by *negligence,* where the plaintiff has been *non-suited* at the trial, and where he submitted without objection, to have the question of negligence passed upon by the court instead of the jury,

*Held,* that he is precluded on such motion from insisting that the question of *negligence was one exclusively for the jury.*

*New York General Term, February,* 1863.

INGRAHAM, LEONARD and PECKHAM, *Justices.*

THIS was an action to recover damages against the city by reason of certain obstructions in the channel of the Harlem river, between Manhattan Island and Ward's Island, whereby the plaintiffs claim their steamboat was wrecked and lost.

The cause was tried before Mr. Justice HOGEBOOM and a jury, on the 3d day of October, 1861.

The case shows that after the plaintiffs rested, " the defendants moved to dismiss the complaint. The court granted the motion, and the plaintiffs duly excepted." Upon what ground the motion was made, what points were presented or decided, the case does not show.

A statute was passed in 1807 authorizing certain persons to build a bridge across a part of Harlem river to Great Barn Island—in other words, between Manhattan and Ward's Islands; and when finished, the bridge was by the statute required " to be forever thereafter kept and maintained in good repair at the sole expense of the proprietors and inhabitants of said island (Ward's Island) for the time being."

The bridge was built, but in 1815 was swept away, leaving a part of the stone constituting its abutment still there. Upon that stone, it was proved, the injury occurred to plaintiffs' boat in July, 1858.

The plaintiffs also proved that the defendants owned a part of this island from 1851, and at the time of the injury their portion of the island was occupied by some fifty of its employees.

The plaintiffs sought to establish that the injury would not have occurred if the bridge had been kept in good repair, and they claimed (I infer from the evidence given) that the city was bound to keep it in good repair, from its proprietorship and occupancy of the island.

They also claimed (as I infer from the argument here) that the city was bound by its charter to remove from the river obstructions of this character, and not having done so, whereby this loss had been sustained, the defendants were liable for omitting their duty in that behalf.

D. DUDLEY FIFLD, *for plaintiffs*
HENRY H. ANDERSON, *for defendants*

By the court, PECKHAM, Justice. From the course of the trial I infer and shall assume that the court conceded the liability of the defendants for this injury in case it occurred without negligence on the part of the plaintiffs. If not, the complaint should have been dismissed when the cause was opened. If the defendants were not liable and could not be so held under my proof, either as proprietors and occupants of the island, or by reason of the obligations imposed by their charter, the testimony was entirely supefluous and immaterial. I assume, therefore, that the court placed its decision in fact upon the negligence of the plaintiffs contributing to the injury.

The case presents a good deal of evidence bearing upon this point of negligence on the part of the plaintiffs.

1st. As to the condition of the boat. She was about or a little over a quarter of a century old when she was lost, but she had had a new boiler put in her since 1852; as the witness, Boatman, her former owner, expresses it,

" she was a good boat for her age." She was staunch and well built. But the immediate or direct cause of the accident was the breaking of what is called the " tap screws," which both broke and fell into the fire below, together with the " guide," to which they were attached. This had the effect to stop the engine, and before she could be put in order again this injury occurred.

These " tap screws," two in number, were, one witness (Franklin, the fireman,) says, about three-eighths of an inch in diameter, and another (Browley, an engineer,) " about half an inch in diameter—a light affair."

In answer to the question, what would be likely to cause the breaking of both tap screws at once, this witness said, " they might by a continual jar—iron loses its tenacity by continual vibration." By his further cross and direct examination, the witness then proved that these screws must have been defective or they would not break. This he modifies, and then modifies the modification. There could be no sudden strain on them, he says, " the strain at any time must be very trifling."

It would seem from this testimony that the iron in these screws, from twenty-five years' vibration, had lost its tenacity and broken ; and as they were so material, so vital to the working of the steamer, was it not negligence that they should have been changed in that time ? No government inspector would, or perhaps could, detect such a defect. It would be the duty of her owners, knowing her age, at the proper time to exchange these old for new materials. A government certificate can give no impunity to negligence so far as respects civil remedies.

2d. As to the management of the boat. This boat had been running to Ward's Island for many years, and those on board of her well knew of these stones, the " butments," as the witness called them. They were quite familiar, and obviously dangerous to run upon. At the time of this accident the wind was blowing " very hard " towards this

abutment, and the tide and current were then setting " very strong " in the same direction. Both had the effect to drive her on the rocks as soon as she was disabled. If the accident had not occurred the steamer would have gone within about fifteen or twenty feet of this sunken pier.

If they had kept forty feet from the pier she would have cleared the stone when disabled.

. In view of the age of this boat and her liability to accidents, was it careful and discreet management to run her under such a wind and tide so near to so dangerous a point?

No difficulty was alleged or pretended in going farther from the point. The map of the harbor commissioners showed there was width of channel enough.

It was proved by the plaintiffs that the course pursued by the boat was the usual one she had before taken.

The counsel for the plaintiffs insists here that negligence was a question for the jury.

The court of appeals, in its latest decision, has held the other way; that the court may properly non-suit for that cause; and that court, in the same opinion, has utterly abolished all the former well-known and well-settled degrees of negligence. It is thus announced that " the party injured must have been entirely free from any degree of negligence which contributed to the injury."

If this be the law, (23 *How. Pr. R.*, 492,) can it be claimed that the very highest care and caution were exercised in this case, either as to these screws or in the navigation of the boat?

Again, the counsel for the plaintiffs insists here that this question was one exclusively for the jury. But the difficulty is, he does not seem to have requested to go to the jury at the trial. He seems to have submitted without objection to have the question passed upon by the court instead of the jury. In such case it is held he cannot complain here. (28 *Barb.*, 157; *Winchell* agt. *Hicks*, 18 *N. Y. R.*. 558.)

This view of the case renders unnecessary the examination of questions as to the admissibility of evidence tending merely to show the liability of defendants, provided the plaintiffs were free from fault.

If the question were proper for the jury, their verdict would not ordinarily be set aside. On this evidence, I do not think it would. A new trial should therefore be denied.